**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ESTEBAN BAHENA-CARDENAS,
            *Defendant-Appellant.*

No. 03-50479

D.C. No.
CR-02-00300-BTM

OPINION

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted
December 9, 2004—Pasadena, California

Filed June 13, 2005

Before: Stephen Reinhardt, Cynthia Holcomb Hall, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Hall

6993

**COUNSEL**

Michael Edmund Burke, San Diego, California, for the defendant-appellant.

Anne Kristina Perry, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

## OPINION

HALL, Senior Circuit Judge:

Esteban Bahena-Cardenas was convicted by a jury of entering the United States without permission of the Attorney General after being excluded, deported, or removed from the United States, in violation of 8 U.S.C. § 1326. We affirm.

## BACKGROUND

Bahena-Cardenas first came to the attention of the immigration service following his and his brother's arrest and conviction for possessing heroin with intent to sell. After serving his sentence for the drug crime, he and his brother were ordered deported following a joint hearing in front of an immigration judge ("IJ") at which they were represented by counsel. Bahena-Cardenas was not able to attend the first day of the hearing because he was in a coma caused by a car accident. The IJ denied his lawyer's request that his case be severed from his brother's so that the hearing would not take place in his absence. During this first day, the government presented the testimony of the undercover Drug Enforcement Agency ("DEA") agent who arrested Bahena-Cardenas and his brother. After Bahena-Cardenas recovered and was present, the agent was recalled and fully cross-examined. The IJ determined that Bahena-Cardenas was not a United States citizen and ordered him deported.

In 2000, a San Diego County employee discovered Bahena-Cardenas in San Diego. He was subsequently charged with entering the United States without receiving permission from the Attorney General after being deported under 18 U.S.C. § 1326. He was tried in front of a jury and convicted on June 5, 2003. Three major issues arose at trial, namely, whether Bahena-Cardenas was an American citizen, whether an expert witness should have been allowed to testify about delayed birth certificates in Mexico, and whether there was sufficient

evidence that Bahena-Cardenas physically left the country after being deported and later voluntarily reentered. On appeal, Bahena-Cardenas also raised due process claims concerning his deportation hearing and contends that his sentence was in error.

The jury was instructed to decide the following elements beyond a reasonable doubt: (1) whether the defendant was not a citizen of the United States; (2) whether the defendant had previously been deported and actually removed from the United States to Mexico; (3) whether the defendant voluntarily reentered and remained in the United States without the Attorney General consenting to a reapplication by the defendant for admission into the United States; and (4) whether the defendant was found in the southern district of California.

With regard to Bahena-Cardenas' alienage, the prosecution had to prove beyond a reasonable doubt that Bahena-Cardenas was not a United States citizen. Bahena-Cardenas argued that he was born in San Diego and was therefore a United States citizen. Both sides introduced as evidence a number of documents compiled in Bahena-Cardenas' immigration record or "A file." The government's evidence included a Mexican birth certificate that was created when Bahena-Cardenas was 13, several school records from American schools listing Mexico as his place of birth, and a certificate of baptism issued in 1985 listing his birthplace as Mexico. As evidence of being born in the United States, Bahena-Cardenas introduced two additional certificates of baptism (signed by different pastors) from 1988 and 1989 that showed his birth place as San Diego, a Mexican tourist visa, typically issued to American citizens for travel in Mexico issued to Bahena-Cardenas, a hospital admission record indicating a California birthplace, and a 1988 birth registration showing that Bahena-Cardenas was born at home in San Diego. The defense also submitted as evidence of United States citizenship a voter registration card and social security records. Bahena-Cardenas

also introduced a student eligibility report for the year 1982-83 that listed his citizenship as American.

Both sides also elicited witnesses testimony. A prosecution witness testified that non-citizens can procure voter registration cards and social security records because no evidence of citizenship is required. A defense witness testified that she was a teenager when Bahena-Cardenas was born and was with Bahena-Cardenas' mother at her San Diego home when she began feeling labor pains. The witness testified that she went to get her mother while a friend got another adult, Flavio Canio, who arrived to help deliver the baby. The witness was not allowed inside the house but remained on the porch while, Mrs. Bahena-Cardenas gave birth. Two or three days later, the witness went into the house and saw the baby Esteban. However, the witness was not able to remember the date of Esteban's birth.

Bahena-Cardenas' mother testified that Esteban was born at home in San Diego. She said that the only people in the room with her when Esteban was born were her husband and a friend, Flavio Canio. She testified that the family did not get an American birth certificate for Esteban when he was younger because "my husband was negligent, he didn't let me do anything. . . . Then, afterwards, when the child grew, that is when I told my husband, let's take care of the certificate for the child." She was not aware of anyone getting Esteban a Mexican birth certificate. On cross-examination, the prosecutor impeached her with testimony from the deportation proceeding in which she had testified that her husband and sister-in-law, not Flavio Canio, were present at the birth. She also admitted that she could not remember Esteban's date of birth. She was not able to explain why Esteban's school records listed Mexico as his place of birth. Nor could she explain why she waited until her younger son became a United States citizen to adjust her status, rather than adjusting when Esteban turned 18, as would have been allowed had Esteban been a United States citizen.

The defense sought to present an expert witness to explain the phenomenon of delayed birth certificates in Mexico. The expert witness, a sociology professor, had done research into families living along the border of Mexico and the United States and was prepared to testify that according to a small study she directed of such families, around ten percent of them lied to get Mexican birth certificates. The judge excluded this testimony because, he ruled, there was an insufficient foundation to suggest that the study's results were relevant to the issue of Bahena-Cardenas' birth certificate, which was procured in a different state. Nor could the expert witness testify as to whether there was an amnesty program in place at the time that allowed families to register births without paying a fee, although she was allowed to testify to the general existence of such amnesty programs. The judge also allowed the expert to testify that having a Mexican birth certificate is required to enroll in public schools and to receive free health care in Mexico.

The second element the prosecution was required to prove was whether Bahena-Cardenas actually left the United States following his deportation order. The government produced a warrant of deportation, signed by a deportation officer who attested to watching Bahena-Cardenas walk across the border. That agent did not testify at trial. Instead, another agent testified that the normal practice is for deportation officers to sign the warrant of deportation when they see the alien leave the United States.

The jury was instructed to find Bahena-Cardenas guilty only if the government had proven all the necessary elements beyond a reasonable doubt. The jury returned a verdict of guilty. When the jury foreperson attempted to read the verdict in open court, he had difficulty, and the juror sitting next to him read it instead.

At sentencing, the judge denied all of the defense attorney's requests for downward adjustments, including that for accept-

ing responsibility. The judge increased the sentence because of Bahena-Cardenas' prior convictions. The judge ruled that although he had discretion not to increase Bahena-Cardenas' criminal history score because the conviction for heroin trafficking was 20 years old, he declined to do so. He said he was influenced at least in part by the fact that Bahena-Cardenas had a more recent conviction for transportation of methamphetamine.

## DISCUSSION

### I.   Constitutionality of 8 U.S.C. § 1326

Bahena-Cardenas argues that 8 U.S.C. § 1326 is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because an administrative adjudication — a prior deportation — is an element of the offense. He argues that because a deportation hearing is held without the same procedural protections and with a lower standard of proof than criminal proceedings, such a hearing cannot be one of the elements of a criminal offense.

**[1]** Section 1326 does not violate the rule of *Apprendi*, which requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490. Under § 1326 the government must prove that an alien was "denied admission, excluded, deported, or removed from the United States" and "thereafter . . . enters, attempts to enter, or is at any time found in, the United States." The relevant element is whether Bahena-Cardenas was ordered deported, and the jury found that fact beyond a reasonable doubt. Although a deportation hearing establishes that an alien was "denied admission" or "excluded," and establishing this fact satisfies an element of a § 1326 conviction, the government may not rely on the deportation hearing, but must separately prove the exclusion element to secure a § 1326 conviction. Therefore the criminal trial on a §1326 charge

does not "allow the use of an administrative determination as conclusive evidence of a fact in a criminal prosecution." *United States v. Mendoza-Lopez*, 481 U.S. 828, 834 n.7 (1987).

Second, the fact that there are fewer due process safeguards in a deportation hearing does not make § 1326 unconstitutional because the Supreme Court has held that deportation hearings must comport with the requirements of due process before they "may be used to establish conclusively an element of a criminal offense." *Mendoza-Lopez*, 481 U.S. at 838. To ensure that an alien is convicted of violating § 1326 only after a valid deportation hearing, the deportation hearing must be subject to judicial review, including collateral review if necessary. *Id.* Because all facts necessary for a conviction, including whether the defendant was previously deported, must be proven to a jury beyond a reasonable doubt, and because the deportation itself may be attacked collaterally, § 1326 is not unconstitutional. *See United States v. Lara-Aceves*, 183 F.3d 1007, 1011-12 (9th Cir. 1999) *reversed on other grounds by United States v. Rivera-Sanchez*, 247 F.3d 905 (9th Cir. 2001) (holding that using a prior deportation as an element in a § 1326 conviction is not unconstitutional despite the lesser protections available in a deportation hearing).

## II.   Sufficiency of the Evidence

Bahena-Cardenas argues that there was insufficient evidence with respect to three of the four elements of 8 U.S.C. § 1326 — voluntary entry, physical departure after deportation, and alienage. Because a jury found as a matter of fact that Bahena-Cardenas was guilty, we "must review the evidence presented against the defendant in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Pacheco-Medina*, 212 F.3d 1162, 1163 (9th Cir. 2000) (internal quotations omitted).

## A. Voluntary Entry

**[2]** Bahena-Cardenas argues that the government did not present sufficient evidence that he voluntarily reentered the United States, as required by 8 U.S.C. § 1326.[1] Although the prosecution did not present any direct evidence of voluntary entry, such entry could be permissibly inferred from the government's evidence.

At trial, the government presented evidence that Bahena-Cardenas was found in National City, California, a city in San Diego County that does not share a border with Mexico. Bahena-Cardenas did not present any evidence to the contrary. This evidence is sufficient to prove voluntary entry under *United States v. Quintana-Torres*, 224 F.3d 1157 (9th Cir. 2000).

**[3]** In *Quintana-Torres*, we held that "evidence of [the defendant] being in the United States a distance from the border was sufficient in this case to justify any reasonable juror inferring that he had voluntarily entered the United States." *Id.* at 1158. In the absence of evidence suggesting that the defendant entered the United States involuntarily, his presence in the United States "is circumstantial proof [of voluntary reentry] that is convincing unless explained away" because of the small likelihood that someone entered the United States involuntarily. *Id.* at 1159. Because Bahena-Cardenas did not present any such evidence, we hold that the government produced sufficient evidence to allow any ratio-

---

[1]Bahena-Cardenas also argues that the allegations in the indictment were insufficient because the indictment did not allege entry. However, "we have never suggested that the crime of 'entry' must be charged in order to charge the crime of being 'found in' " the United States. *United States v. Parga-Rosas*, 238 F.3d 1209, 1213 (9th Cir. 2001). In *Parga-Rosas*, the court specifically held that even though voluntary entry is an element that must be proven at trial, it need not be specifically alleged when the indictment charges that the defendant was found in the United States. *Id.*

nal jury to decide that Bahena-Cardenas entered the United States voluntarily.

## B.   Physical Removal

The government must prove beyond a reasonable doubt that Bahena-Cardenas physically left the country sometime between the time he was ordered deported and the time he was found in the United States. *United States v. Romo-Romo*, 246 F.3d 1272, 1275-76 (9th Cir. 2001). Indeed, "an alien must actually leave the country before he can be convicted under § 1326." *Id*. Bahena-Cardenas argues that the government failed to provide sufficient evidence of physical removal because the only evidence showing that he actually left the United States after he was ordered deported was inadmissible hearsay under *Crawford v. Washington*, 124 S.Ct. 1354 (2004).

To prove physical removal, the government offered into evidence a warrant of deportation, signed by an immigration official. The form included a statement that the officer who signed the document "witnessed" Bahena-Cardenas' departure. At trial, a second immigration official testified that it was standard practice for immigration officers to complete and sign a warrant of deportation as they witnessed an alien's deportation. This second immigration officer admitted, however, that he did not "personally observe Mr. Bahena leaving the country."

Before *Crawford*, 124 S.Ct. 1354, the admissibility of the warrant of deportation was clearly established in this circuit. *See United States v. Contreras*, 63 F.3d 852, 857 (9th Cir. 1995) (holding that "[t]he I-205 form [warrant of deportation] is hearsay, but is admissible under the public records exception to the hearsay rule"); *see also United States v. Hernandez-Rojas*, 617 F.2d 533 (9th Cir. 1980). Bahena-Cardenas argues that after the Supreme Court's decision in

*Crawford*, the warrant of deportation is no longer admissible. We disagree.

**[4]** In *Crawford*, the Supreme Court held that "the government cannot introduce *testimonial* evidence against a criminal defendant where the declarant is unavailable at trial and there was no opportunity for cross-examination at the time the prior testimony was given." *United States v. Wilmore*, 381 F.3d 868, 871 (9th Cir. 2004) (emphasis added) (citing *Crawford*, 124 S.Ct. at 1374); *see Parle v. Runnels*, 387 F.3d 1030, 1037 (9th Cir. 2004) (holding that *Crawford* does not apply to nontestimonial hearsay). However, the Supreme Court declined to define what constitutes testimonial evidence. Instead, the Court noted that "[w]e leave for another day any effort to spell out a comprehensive definition of 'testimonial.' Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 124 S. Ct. at 1374.

**[5]** We conclude that the warrant of deportation is nontestimonial because it was not made in anticipation of litigation, and because it is simply a routine, objective, cataloging of an unambiguous factual matter. In *United States v. Hernandez-Rojas*, 617 F.2d 533, 535 (9th Cir. 1980), we held that a warrant of deportation "has none of the features of the subjective report made by a law enforcement official in an on-the-scene investigation, which investigative reports lack sufficient guarantees of trustworthiness because they are made in an adversary setting and likely to be used in litigation." Indeed, "[t]he notation that [defendant] was deported to Mexico was a ministerial, objective observation, which has inherent reliability because of the Government's need to keep accurate records of the movement of aliens." *Id*. Additionally, in *United States v. Contreras*, 63 F.3d 852, 857 (9th Cir. 1995), we echoed this reasoning, holding that "the notation on an I-205 form [warrant of deportation] indicating that an alien has left the country is a routine, objective, indeed mechanical recording of an

unambiguous factual matter." In this sense, the warrant of deportation is no different than a birth certificate or any other public record which constitutes the routine cataloguing of an unambiguous factual matter. Surely *Crawford* did not mean to require the doctor or nurse who actually filled out a birth certificate to testify as to its veracity.

We hold that the warrant of deportation in this case is non-testimonial and thus admissible. Accordingly, the government provided sufficient evidence of physical removal.

## C.   Alienage

Bahena-Cardenas argues that there was insufficient evidence for a jury to find beyond a reasonable doubt that he was not a United States citizen. "This sufficiency-of-the-evidence challenge can succeed only if, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Lo*, 231 F.3d 471, 475 (9th Cir. 2000). However,

> this inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979) (emphasis in original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). We have held that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

The government's evidence to support its claim of alienage consisted of (1) a Mexican birth certificate obtained by Bahena-Cardenas' father when he was 13; (2) elementary and secondary school records from American schools that listed Mexico as his place of birth; (3) a 1985 certificate of baptism issued in the United States listing his birthplace as Mexico; and (4) evidence of deportation. In his defense, Bahena-Cardenas introduced (1) additional certificates of baptism from a church in the United States signed by different pastors in 1988 and 1989 that showed his birth place as San Diego; (2) a Mexican tourist visa typically issued to American citizens traveling to Mexico; (3) a hospital admission record indicating a California birthplace; (4) a voter registration card issued after deportation proceedings began, (5) social security records; (6) a student eligibility report from 1982-83 listing his citizenship as American; (7) a birth certificate issued in 1988 showing that Bahena-Cardenas was born at home in San Diego; and (8) testimony from his mother and a family friend that Bahena-Cardenas was born at home in San Diego.

**[6]** The jury resolved the conflicting evidence in the government's favor and concluded beyond a reasonable doubt that defendant was not a United States citizen. While the evidence was contradictory on this point, contradictory evidence alone does not require us to find that no rational jury could have made such a finding. It is the responsibility of the jury to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences. That the jury found the defendant guilty shows that the jury rejected or found unconvincing the contrary evidence. As the Supreme Court held in *Johnson*, 406 U.S. at 362 (internal citations omitted):

> Jury verdicts finding guilt beyond a reasonable doubt are regularly sustained even though the evidence was such that the jury would have been justified in having a reasonable doubt; even though the trial judge might not have reached the same conclusion as the jury; and even though appellate judges are closely

divided on the issue whether there was sufficient evidence to support a conviction.

After viewing the evidence in the light most favorable to the government, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

## III.   Foreperson's Inability to Read the Verdict

**[7]** When the jury foreman attempted to read the verdict in open court, he stumbled and stammered, and ultimately a different juror read the verdict. Bahena-Cardenas argues that these actions were signs of juror illiteracy and that having an illiterate person on the jury would compromise his due process rights because the juror would not have been able to read the large number of written exhibits introduced by both sides. Bahena-Cardenas does not cite any case law in support of his contention that inclusion of an illiterate juror is a due process violation, and we can find none. Additionally, such conduct seems equally indicative of nervousness. Accordingly, we conclude that the foreperson's difficulty reading the verdict in open court did not result in a violation of Bahena-Cardenas' due process rights.

## IV.   Due Process Challenges to the Original Deportation Hearing

A due process violation that renders the underlying deportation invalid also invalidates a conviction under 8 U.S.C. § 1326. *Mendoza-Lopez*, 481 U.S. at 840. Bahena-Cardenas argues that the underlying deportation was invalid because the hearing violated his due process rights in two ways. First, Bahena-Cardenas argues that his due process rights were violated because he was in a coma during the first day of his hearing. Second, Bahena-Cardenas contends that the immigration judge's failure to advise him of the possibility of discre-

tionary relief violated due process. We are not persuaded by either argument.

## A.   Lack of Presence at Hearing

[8] Bahena-Cardenas argues that holding the immigration hearing when he could not be present violated his due process rights. He is correct that due process requires physical presence in deportation hearings. *See United States v. Leon-Leon*, 35 F.3d 1428, 1431 n.2 (9th Cir. 1994) (citing *Purba v. INS*, 884 F.2d 516, 517 (9th Cir. 1989) (holding that an alien is entitled to be physically present at a deportation hearing)). However, we conclude that the violation was not prejudicial.

Bahena-Cardenas argues that holding the hearing without his presence was such an egregious due process violation that it is unnecessary to show prejudice. However, we have consistently held that defendants must show prejudice in order to invalidate a § 1326 conviction even when the due process violation is clear. *See*, *e.g.*, *United States v. Alvarado-Delgado*, 98 F.3d 492, 493 (9th Cir. 1996) (en banc) (holding that defendant who was deported without being informed of his right to a deportation hearing, while having established a violation of due process, must still show prejudice); *Leon-Leon*, 35 F.3d at 1431 (holding that "in spite of any violation of the alien's due process rights, the deportation order may still be used to prove an element of a crime if the alien fails to show prejudice resulting from the violation"); *United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1992) (en banc) (holding that "[t]he defendant also bears the burden of proving prejudice" when immigration judge did not act in accord with due process).

[9] Bahena-Cardenas has not demonstrated that he was prejudiced by his absence on the first day of his deportation hearing. During the portion of the hearing that Bahena-Cardenas missed, the only person who testified was the DEA agent who arrested Bahena-Cardenas for selling heroin. The

agent was later recalled and subjected to full cross-examination in Bahena-Cardenas' presence. Moreover, the immigration judge specifically did not find the agent's testimony dispositive.

Bahena-Cardenas also argues that his absence from the beginning of the trial violated his Sixth Amendment rights because he was denied the opportunity to assist his lawyer effectively during the deportation hearing, making it the equivalent of an "uncounseled prior." Although aliens in deportation proceedings have no constitutional right to counsel under the Sixth Amendment, *Lara-Aceves*, 183 F.3d at 1010 (citing *Magallanes-Damian v. INS*, 783 F.2d 931, 933 (9th Cir. 1986)), the Fifth Amendment right to due process has been construed to give aliens the right to have counsel present. *See Baltazar-Alcazar v. INS*, 386 F.3d 940, 944 (9th Cir. 2004).

Bahena-Cardenas, however, was not denied counsel. In fact, his lawyer was present at the hearing and it was Bahena-Cardenas himself who was unavailable. We find no precedent that suggests that a defendant's absence from a hearing or trial, when counsel is present, constitutes a denial of the right to counsel. Indeed, the right to counsel is important because of the difficulty aliens have in presenting their cases forcefully and effectively:

> A petitioner must weave together a complex tapestry of evidence and then juxtapose and reconcile that picture with the voluminous, and not always consistent, administrative and court precedent in this changing area. . . . These factors and related legal requirements are daunting enough for a seasoned immigration lawyer. . . . It is no wonder we have observed with only a small degree of hyperbole, the immigration laws have been termed second only to the Internal Revenue Code in complexity. A lawyer

is often the only person who could thread the laby-
rinth.

*Baltazar-Alcazar*, 386 F.3d at 947-48 (internal citations and
quotations omitted). An alien's absence from the proceedings
when a lawyer is ably representing his interests does not
create such problems.

Accordingly, we conclude that Bahena-Cardenas' § 1326
conviction should not be overturned based on the fact that he
was not present for the beginning of his deportation hearing.

### B.    Failure to Inform of Discretionary Relief

Bahena-Cardenas argues that his due process rights were
violated because the immigration judge did not advise him of
plausible discretionary relief. Bahena-Cardenas was deported
following a conviction for selling heroin, and he is therefore
excludable under 8 U.S.C. § 1182(a)(2). The only waiver
available is found in subsection (h), which applies only to
those aliens who were convicted of a single offense of simple
possession of 30 grams or less of marijuana, and therefore
does not apply to Bahena-Cardenas. Accordingly, because
Bahena-Cardenas could not plausibly qualify for discretionary
relief, there is no due process violation.

### V.   Testimony of Mexican "Cultural Expert"

Bahena-Cardenas argues that the district judge erred in
refusing to allow one of the defense's expert witnesses to tes-
tify. We review the district court's decision to exclude expert
witness testimony for abuse of discretion. *United States v.
Cordoba*, 194 F.3d 1053 (9th Cir. 1999). We conclude that it
was not an abuse of discretion to hold that such testimony
involved more cultural stereotypes than scientific evidence.

The defense provided a witness who claimed to be an
expert in Mexican transborder culture. Outside of the pres-

ence of the jury, the expert testified about a small-scale study she performed in which a small percentage of study respondents in Tijuana reported lying to Mexican officials in order to get a Mexican birth certificate. The defense argued that the study supported the possibility that Bahena-Cardenas' father similarly lied when registering his son's birth. The district court refused to allow the testimony, reasoning that the study was too small and did not involve practices in Guerrera, the state that issued Bahena-Cardenas' birth certificate. The court also reasoned that only impermissible stereotypes would allow the jury to generalize from the expert's study to the particular facts in this case. The court did allow the expert to testify that having a Mexican birth certificate is required to enroll in public schools and to receive free health care in Mexico.

[10] The expert's study involved only 56 people, and of those, only five or six reported lying to get a Mexican birth certificate. Generalizing from this scant evidence to reach conclusions in this particular case could encourage jurors to resort to cultural stereotypes. Refusing to allow expert testimony that would encourage or require jurors to rely on cultural stereotypes is not an abuse of discretion. *See United States v. Verduzco*, 373 F.3d 1022, 1034 (9th Cir. 2004) (holding that it was not an abuse of discretion to exclude expert witness testimony regarding drug cultures); *Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1007 (9th Cir. 2001) ("Allowing an expert witness in a civil action to generalize that most Korean businesses are corrupt, are not to be trusted and will engage in complicated business transactions to evade Korean currency laws is tantamount to ethnic or cultural stereotyping, inviting the jury to assume the Korean litigant fits the stereotype."); *United States v. Rubio-Villareal*, 927 F.2d 1495, 1502 n.6 (9th Cir. 1991) (holding that it was not an abuse of discretion to reject testimony that "would have shown that [defendant's] failure to register his truck is a common phenomenon in Mexico").

## VI. Sentencing

**[11]** Because Bahena-Cardenas did not challenge his sentence on Sixth Amendment grounds in the district court, we grant a limited remand pursuant to *United States v. Ameline*, No. 02-30326, slip op. at 6368-71 (9th Cir. June 1, 2005) (en banc).

## CONCLUSION

Accordingly, the judgment of the district court is

**AFFIRMED IN PART** and **REMANDED**.