[847 NE2d 1149, 814 NYS2d 575]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v STEPHEN
M. PACER, Respondent.

Argued February 16, 2006; decided March 28, 2006

**POINTS OF COUNSEL**

*Richard A. Brown, District Attorney,* Kew Gardens (*Jennifer M. Hagan* and *John M. Castellano* of counsel), and *R. Michael Tantillo, District Attorney,* Canandaigua, for appellant. I. The Appellate Division erred in holding that admission of the Vehicle and Traffic Law § 214 affidavit, which merely described matters within the routine operation of a public agency, violated the Confrontation Clause. (*Crawford v Washington,* 541 US 36; *Ohio v Roberts,* 448 US 56; *United States v Cervantes-Flores,* 421 F3d 825; *United States v Rueda-Rivera,* 396 F3d 678; *United States v Weiland,* 420 F3d 1062; *People v Durio,* 7 Misc 3d 729;

*People v Rogers,* 8 AD3d 888; *Gaines v Relf,* 12 How [53 US] 472; *Owings v Speed,* 5 Wheat [18 US] 420; *Evanston v Gunn,* 99 US 660.) II. The trial court properly declined to charge the lesser included offense of unlicensed operation of a motor vehicle because no reasonable view of the evidence supported the lesser offense but not the greater. *(People v Glover,* 57 NY2d 61; *People v Scarborough,* 49 NY2d 364; *People v Mussenden,* 308 NY 558; *Sanchez v State of New York,* 99 NY2d 247; *People v Demperio,* 86 NY2d 549; *Matter of Northland Transp. v Jackson,* 271 AD2d 846; *People ex rel. Price v Sheffield Farms-Slawson-Decker Co.,* 225 NY 25; *People v Kirksey,* 186 Misc 2d 514.)

*John E. Tyo,* Shortsville, for respondent. I. The Appellate Division, Fourth Department's determination that the receipt of the affidavit of regularity/proof of mailing violated defendant's right of confrontation correctly applies the rule enunciated in *Crawford v Washington* (541 US 36 [2004]). *(Ohio v Roberts,* 448 US 56; *Pointer v Texas,* 380 US 400; *White v Illinois,* 502 US 346; *People v Capellan,* 6 Misc 3d 809; *People v Niene,* 8 Misc 3d 649; *People v Woods,* 9 AD3d 293; *People v Douglas,* 4 NY3d 777; *People v Ryan,* 17 AD3d 1; *People v Rogers,* 8 AD3d 888; *People v Crimmins,* 36 NY2d 230.) II. The Appellate Division's decision that it was error for the court to have refused to charge down to unlicensed operation as a lesser included offense of aggravated unlicensed operation is correct and should be upheld. *(People v Gribben,* 164 AD2d 944; *People v Glover,* 57 NY2d 61; *People v Green,* 56 NY2d 427.)

*Peter Lushing,* New York City, and *Richard D. Willstatter,* White Plains, for New York State Association of Criminal Defense Lawyers and another, amici curiae. *Crawford v Washington* (541 US 36 [2004]) squarely bars official affidavits prepared specifically and solely for a given prosecution. *(Sandstrom v Montana,* 442 US 510; *People v Gabriel,* 164 Misc 2d 473; *People v Kirksey,* 186 Misc 2d 514; *People v Pabon,* 167 Misc 2d 214; *United States v Saget,* 377 F3d 223; *Dutton v Evans,* 400 US 74; *United States v Cervantes-Flores,* 421 F3d 825; *United States v Weiland,* 420 F3d 1062; *People v Hernandez,* 7 Misc 3d 568; *United States v Oates,* 560 F2d 45.)

*Eliot Spitzer, Attorney General,* New York City (*Daniel Smirlock* and *Robin A. Forshaw* of counsel), amicus curiae. The Department of Motor Vehicles records admitted at defendant's trial, as well as other official records reflecting routine operations of other governmental agencies, are not within the "core"

class of testimonial statements to which *Crawford v Washington* (541 US 36 [2004]) applies. (*United States v Cervantes-Flores,* 421 F3d 825; *People v Nisonoff,* 293 NY 597, 326 US 745; *People v Reese,* 258 NY 89; *People v Sanders,* 56 NY2d 51; *United States v Rueda-Rivera,* 396 F3d 678; *United States v Weiland,* 420 F3d 1062; *People v Smith,* 258 AD2d 245; *People v Kollore,* 151 Misc 2d 384; *People v Shanis,* 36 NY2d 697; *People v Casey,* 95 NY2d 354.)

### OPINION OF THE COURT

Rosenblatt, J.

The appeal before us presents a Confrontation Clause issue under *Crawford v Washington* (541 US 36 [2004]). Defendant was charged with aggravated unlicensed operation of a motor vehicle in the first degree (Vehicle and Traffic Law § 511 [3] [a]) and related offenses. At trial, to prove that defendant knew his driving privileges had been revoked and was thus guilty of an aggravated offense, the prosecution introduced an affidavit prepared by a Department of Motor Vehicles official in 2003 describing the agency's revocation and mailing procedures, and averring that on information and belief they were satisfied. The Appellate Division correctly ruled that, under *Crawford*, the trial court should not have admitted the affidavit.

### I.

In 1987, as a teenager lacking a driver's license, defendant pleaded guilty in Wyoming County to driving under the influence of alcohol. He paid a fine and the Commissioner of Motor Vehicles revoked his "privilege of operating a motor vehicle in New York." Shortly thereafter, defendant moved to Georgia, where he successfully obtained a driver's license. On July 19, 2003, 16 years after the conviction, defendant drove in Ontario County, New York, after drinking heavily. He crashed his car, fled the scene and falsely told police that his car had been stolen. The revocation of his New York State driving privileges, however, remained in force.

The People charged defendant with aggravated unlicensed operation of a motor vehicle in the first degree (Vehicle and Traffic Law § 511 [3] [a]), two counts of operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [2], [3]), falsely reporting an incident in the third degree (Penal Law § 240.50 [3]) and leaving the scene of an incident without reporting (Vehicle and Traffic Law § 600 [1]

[a]). After a County Court trial in which defendant testified that he had not known his New York State driving privileges had been revoked, a jury found him guilty on all counts.

The Appellate Division modified the judgment, reversed the conviction for aggravated unlicensed operation, ordered a new trial on that count and sustained the remaining counts (21 AD3d 192 [2005]). The Court held that the affidavit introduced by the People to prove defendant's knowledge that his license had been revoked violated his constitutional right to confront the witnesses against him. The Court also held that County Court erred by refusing to charge the lesser included offense of unlicensed operation of a motor vehicle (Vehicle and Traffic Law § 509 [1]). A Judge of this Court granted the People leave to appeal. We affirm.

## II.

The felony offense of first-degree aggravated unlicensed operation has a mens rea element. To be convicted, a defendant must know or have reason to know that his driving privileges have been revoked, suspended or otherwise withdrawn by the Commissioner of Motor Vehicles.[1] Defendants who drive without a license but who neither know nor have reason to know that their driving privileges have been terminated commit a violation (Vehicle and Traffic Law § 509 [1]).

---

1. Vehicle and Traffic Law § 511 (3) provides

"(a) A person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the first degree when such person: (i) commits the offense of aggravated unlicensed operation of a motor vehicle in the second degree as provided in subparagraph (ii), (iii) or (iv) of paragraph (a) of subdivision two of this section and is operating a motor vehicle while under the influence of alcohol or a drug in violation of subdivision one, two, three, four or five of section eleven hundred ninety-two of this chapter . . . ."

The first two referenced subparagraphs of section 511 (2) (a) refer to license revocations or suspensions due to alcohol-related driving offenses. The mens rea element derives from the basic definition of aggravated unlicensed operation found in section 511 (1) (a):

"A person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the third degree when such person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner."

Here, defendant testified he never learned that his New York State driving privileges had been revoked. The defense argued that his move to Georgia around the same time as the 1987 proceedings may have prevented notice from reaching him. As their sole proof that defendant knew or had reason to know his privileges were revoked, the People introduced an August 13, 2003 document titled "Affidavit of Regularity/Proof of Mailing" from a Department of Motor Vehicles official, purporting to explain the Department's ordinary mailing procedures for revocation notices. The affidavit contained a statement, on the official's "information and belief," that the ordinary procedures described in the affidavit had been followed in defendant's case.[2]

Defendant did not object to admission of the underlying certificate of revocation. He did, however, object on Sixth Amendment grounds to the admission of the affidavit.[3] County Court overruled the objection.

The People concede that the affidavit is a sworn document prepared by a government official specifically for use by the prosecution at trial. They further concede that defendant never had a chance to cross-examine the affiant and that the prosecution produced no evidence that the affiant was unavailable to testify. The People argue, however, that the affidavit was admissible as a business record or public record, and thus outside the scope of the Confrontation Clause.

We begin our analysis with the Supreme Court's discussion of the Confrontation Clause in *Crawford v Washington* (541 US 36

---

2. The affidavit was prepared under the statutory authorization in Vehicle and Traffic Law § 214, which provides:

> "The production of a copy of a notice or order issued by the department, together with an electronically-generated record of entry of such order or notice upon the appropriate driver's license or registration file of the department and an affidavit by an employee designated by the commissioner as having responsibility for the issuance of such order or notice issued by the department setting forth the procedure for the issuance and the mailing of such notice or order shall be presumptive evidence that such notice of suspension, revocation or order was produced and mailed in accordance with such procedures. The foregoing procedure shall not preclude the use of an affidavit of service by mail, a certificate of mailing or proof of certified or registered mail as proof of mailing of any such order or notice."

3. The Sixth Amendment guarantees criminal defendants the right to be "confronted with the witnesses against [them]." This right is binding on the states through the Federal Constitution's Fourteenth Amendment (*see Pointer v Texas*, 380 US 400, 403 [1965]). Defendant here has neither preserved nor argued any claim based on our State Constitution.

[2004]). There, the Court held that "testimonial" statements not previously subjected to cross-examination are inadmissible against a criminal defendant. The Court did not fully spell out what is "testimonial," but offered some guidance. It referred to "[v]arious formulations" of the "core class of 'testimonial' statements," including:

> " 'ex parte in-court testimony or its functional equivalent that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' . . . 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' [and] 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " (Crawford, 541 US at 51-52 [citations omitted].)

Although Crawford repeatedly describes affidavits as typically being testimonial, not all affidavits are inadmissible. The Crawford court concluded that business records would not have been considered testimonial at the time the Confrontation Clause was adopted (541 US at 56).

Claiming that the challenged affidavit is not "accusatory," the People argue that the affidavit is more like an ordinary business record or public record than a testimonial statement. To make their point, they cite 18th-century English cases showing that hearsay from accusers—like hearsay from direct victims of crime or other witnesses—was barred under English common law. It does not follow, however, that the challenged affidavit is admissible as nonaccusatory hearsay.

For one thing, and contrary to the People's suggestion, the government agent who swore out the affidavit is not a "neutral" officer. The official's assertion of her "information and belief" that the ordinary mailing procedures were carried out in defendant's case is a direct accusation of an essential element of the crime, that defendant knew or should have known of the rev-

ocation.[4] Moreover, because the People presented no other evidence to satisfy this element, the affiant is the closest the People come to having a "witness" to prove that defendant knew or should have known of the revocation.

The People also cite cases in which federal Courts of Appeals have held other types of affidavits not testimonial. These decisions, however, are distinguishable from the case before us.

In *United States v Cervantes-Flores* (421 F3d 825 [9th Cir 2005]), the Ninth Circuit ruled that an affidavit from an immigration officer certifying the *absence* of a record in the immigration agency's files was admissible as nontestimonial under *Crawford*. The court reasoned that the record itself, if present, would have been admissible as one maintained in the ordinary course of agency business; its absence was similarly admissible. Here, in contrast, the challenged affidavit does not merely assert that the Department had a certificate showing that defendant's license had been revoked. It goes well beyond that, and alleges that the agency took a specific action against defendant based on that revocation—namely, mailing the notice.

Similarly, in *United States v Rueda-Rivera* (396 F3d 678 [5th Cir 2005]), the Fifth Circuit held that a certificate of nonexistence of an immigration record was admissible as a nontestimonial business record, even though the certificate was sworn and created by a government agent for use at trial. In the case before us, however, the prosecution introduced the challenged affidavit to establish that the agency actually mailed out notice to defendant in 1987; it did not merely reveal the ongoing presence or absence of an agency record.

In *United States v Cantellano* (430 F3d 1142 [11th Cir 2005]), the Government sought to prove that the defendant had reentered the country after being deported. This required proof that he had actually left the country after the original deportation. An immigration enforcement agent submitted a "warrant

---

4. The accusatory sentence avers "[t]hat upon information and belief, the orders referenced [pertaining to this defendant] were processed, distributed and/or mailed from this department in the manner and form described in the regular course of the New York State Department of Motor Vehicles' daily business." We note that the "manner and form" of mailing procedures described in the earlier sections of the affidavit are written in the present tense and that the affidavit was sworn to on August 13, 2003. The defense has not challenged the affidavit's relevance to procedures as they were in 1987, when defendant's revocation notice would have been mailed, and we presume for purposes of this appeal that the affidavit may be interpreted as implying that the procedures have not changed.

of deportation" attesting that he saw Cantellano leave the United States. The court admitted the warrant without testimony from the agent. The 11th Circuit held the sworn declaration nontestimonial, and hence admissible under *Crawford*, because it was not prepared specifically for the prosecution, but rather was a contemporaneous document recorded as part of the routine duties of border agents who see deportees leave the country. Here, however, the challenged affidavit was admittedly prepared at the People's request for use at trial.

*United States v Bahena-Cardenas* (411 F3d 1067, 1074 [9th Cir 2005]) also concerns a deportation warrant prepared at the time of deportation and admitted at the defendant's later trial for reentry. Because it was prepared as part of the immigration agent's routine duties and not in preparation for trial, the document differs from the affidavit before us.

■ Here, the affiant's sworn statement—that she had information causing her to believe that the Department actually mailed notice of revocation to defendant—was crucial to the People's case.[5] Faced with evidence of this type, defendants have no means of challenging the People's proof on a critical element. Without an opportunity to cross-examine the affiant, defendant had no chance to inquire about the *basis* for the affiant's "information and belief" that the Department mailed the notice. Defendant had no chance to inquire whether the Department sometimes makes mistakes in mailing revocation notices; whether there were other drivers in the Department's database with the same name as defendant to whom the Department might have mailed the notice; to what address the affiant believed, based on her information, the Department had mailed the notice; whether the notice might have been returned undelivered; or whether the affiant could testify reliably about procedures as they existed 16 years earlier. In short, the lack of a live witness to confront eliminated defendant's opportunity to contest a decisive piece of evidence against him. This is exactly the evil the Confrontation Clause was designed to prevent.

---

5. The People also argue that even if defendant lacked "knowledge" that his privileges had been revoked, he at least had "reason to know" of the revocation because it was an automatic consequence of his original 1987 conviction. The People presented no evidence of the specifics of that conviction and no record of the trial court's explanation of the conviction's direct consequences (if any). Indeed, the record lacks even an exact description of what statute defendant violated. On this record, we see nothing to support the People's inference that defendant had "reason to know" of the license revocation.

■ The Appellate Division further held that County Court erred by failing to charge unlicensed operation of a motor vehicle (Vehicle and Traffic Law § 509 [1]) as a lesser included offense of aggravated unlicensed operation. The People argue that the only reasonable view of the evidence is that defendant committed either the aggravated offense or nothing. We disagree. Defendant admitted on the stand that he had no New York State driver's license when he committed the underlying acts in this case but contended that he did not know his New York State driving privileges had been revoked. On this point of credibility, a reasonable juror could have found that defendant drove without a license yet lacked knowledge or a reason to know that his New York license had been revoked. Therefore, the lesser charge should have been given to the jury when defendant requested it.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed.