2008 ME 177

**STATE of Maine**

v.

**Richard E. TAYMAN Jr.**

Supreme Judicial Court of Maine.

Argued: Sept. 16, 2008.

Decided: Dec. 4, 2008.

Chris A. Nielsen, Esq. (orally), Nielsen & Bly, P.C., Biddeford, ME, for Richard Tayman Jr.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty. (orally), Portland, ME, for State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, and SILVER, JJ.

Dissent: MEAD and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] Richard E. Tayman Jr. appeals from a judgment of conviction of operating after suspension (Class E), 29–A M.R.S. § 2412–A(1–A) (2007), and unlawful possession of a license (Class E), 29–A M.R.S. § 2102(1–A) (2007), entered in the District Court (Portland, *Cole, J.*) following a nonjury trial. Tayman argues that (1) evidence entered against him providing proof of notice of his license suspension was insufficient to support his conviction, and (2) the admission of that same evidence violated his Sixth Amendment rights under the Confrontation Clause of the United States Constitution. Because we conclude that the evidence offered by the State at trial was both sufficient to prove notice and nontestimonial under the United State Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), we affirm Tayman's conviction.

## I. BACKGROUND

[¶ 2] In May of 2007, a Cumberland police officer stopped Tayman for exceeding the posted speed limit of forty miles per hour. During the stop, the officer confirmed through the Bureau of Motor Vehicles that Tayman's license had been suspended[1] and summoned him for operating with a suspended license and possession of a suspended license. Tayman was subsequently charged with operating after

---

1. Tayman's underlying suspension resulted from a failure to pay fines and fees associated with an earlier conviction for failure to produce evidence of insurance.

suspension and unlawful possession of a license. The first count of the complaint charged that Tayman "did operate a motor vehicle on a public way ... at a time when his license had been suspended or revoked ... having had knowledge or notice of the said suspension pursuant to one or more of the alternatives set forth by T. 29–A M.R.S.A., Section 2412–A."

[¶ 3] A nonjury trial was held in District Court on January 15, 2008. At trial, the State introduced two pieces of evidence to prove proper notice to Tayman pursuant to the statute. The first contained a certification by the Secretary of State, providing that "notice of suspension was sent by regular mail to Richard E. Tayman, Jr .... by the Violations Bureau of the District Court, pursuant to 29–A MRSA Section 2608." The second, a Violations Bureau docket sheet attested to by a clerk of the Bureau, contained an entry dated March 22, 2007, stating, "Notice of Suspension sent to Defendant and BMV." Although the docket sheet expressly states that a copy of the notice was sent to the Bureau of Motor Vehicles, no copy was attached to either exhibit introduced at trial,[2] and neither exhibit contained the address to which the notice of suspension was mailed. Over Tayman's objection, the presiding judge admitted both pieces of evidence and found Tayman guilty of both counts, imposing a fine of $750 for operating after suspension and $250 for unlawful possession of a license. Tayman timely appealed from this decision.

## II. DISCUSSION

### A. Sufficiency of Evidence

■■■ [¶ 4] In assessing the sufficiency of evidence to support a criminal conviction, we review the evidence, and all reasonable inferences drawn from that evidence, in the light most favorable to the State to determine whether the trier of fact could have found every element of the offense charged beyond a reasonable doubt. *State v. Smen*, 2006 ME 40, ¶ 7, 895 A.2d 319, 321. Tayman argues that, because the State did not produce a copy of the actual notification sent to him, it failed to prove a necessary element of the operating after suspension charge as laid out in section 2412–A. Specifically, he asserts that the two documents offered at trial, containing only bare assertions of proper notice, were insufficient to prove that the State complied with the statutory notice requirement.

[¶ 5] The statute defining the offense of operating after suspension provides, in relevant part:

1–A. **Offense; penalty.** A person commits operating while license suspended or revoked if that person:

A. Operates a motor vehicle on a public way or in a parking area when that person's license has been suspended or revoked, and that person:

(1) Has received written notice of a suspension or revocation from the Secretary of State or a court;

(2) Has been orally informed of the suspension or revocation by a law enforcement officer or a court;

(3) Has actual knowledge of the suspension or revocation;

(4) Has been sent written notice in accordance with section 2482 or former Title 29, section 2241, subsection 4; or

(5) Has failed to answer or to appear in court pursuant to a notice or

to the certificate introduced at trial.

---

**2.** The better practice, to avoid confusion, would be to attach a copy of the actual notice

order specified in section 2605 or 2608.

29–A M.R.S. § 2412–A(1–A).

[¶ 6] Because Tayman's underlying suspension was the result of a failure to pay fines and fees associated with an earlier conviction, both parties agree that the appropriate notice is that referenced in paragraph five of the statute and is controlled by 29–A M.R.S. § 2608 (2007), which requires a court clerk to suspend a person's license upon failure to pay a fine assessed in any traffic infraction proceeding and to "immediately notify that person of the suspension by regular mail or personal service." The statute further provides:

> Written notice is sufficient if sent by regular mail to the last known name and address provided by the person on the Violation Summons and Complaint, written answer to a Violation Summons and Complaint, a written pleading filed with the violations bureau or, if the person has not so provided an address, to the address shown on the Violation Summons and Complaint, a copy of which has been served on the person. The notice must also state that the license, permit or right to operate will not be reinstated and the person may not operate a motor vehicle before payment of the reinstatement fee as required under section 2486.

*Id.*

[¶ 7] In considering previous sufficiency of evidence challenges to operating after suspension charges, we have held that proof of mailing of notice, rather than of actual receipt, satisfied both statutory and due process requirements, and that "mail addressed to a licensee at the address he himself supplied is reasonably calculated to reach him and apprise him of the Secretary's action." *State v. Kovtuschenko,* 521 A.2d 718, 719 (Me.1987). In *State v. La-marre,* we reiterated that the State is not required to prove receipt, and held that "evidence of mailing, if believed by the factfinder" is sufficient to prove the notice element of an operating after suspension charge. 553 A.2d 1260, 1262 (Me.1989).

[¶ 8] To prove notice of the suspension to Tayman, the State offered a certification by the Secretary of State indicating that, based on the records and documents it had received from the Violations Bureau, "notice of suspension was sent by regular mail to Richard E. Tayman, Jr., ... by the Violations Bureau of the District Court, pursuant to 29–A MRSA Section 2608." Title 29–A M.R.S. § 113(3) (2007) provides that the Secretary of State's certification of any court's records "must be received in a judicial or administrative proceeding as prima facie evidence of any fact stated in the certificate or documents attached to the certificate." The Violations Bureau is designated as a part of the District Court for the State of Maine. 4 M.R.S. § 164(12) (2007).

[¶ 9] Once the State presented prima facie evidence that notice had been sent as required, Tayman offered nothing at trial to rebut the State's proof of mailing. Indeed, Tayman does not suggest that notice was not sent or allege any specific infirmity with the mailing procedure, but rather focuses his insufficiency argument on the fact that the State did not provide a copy of the actual notice. Given that the Secretary of State's certification stands unrebutted on the record, and viewing, as we must, the evidence in the light most favorable to the State, we conclude that the trial court could have rationally found that the element of notice was proved beyond a reasonable doubt. *See Smen,* 2006 ME 40, ¶ 7, 895 A.2d at 321.

B. Confrontation Clause

[¶ 10] Tayman next challenges the State's evidence on Confrontation Clause

grounds, arguing that such evidence is "testimonial" under the U.S. Supreme Court decision in *Crawford*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, and its progeny. The Confrontation Clause of the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The U.S. Supreme Court in *Crawford* set forth a new standard for analyzing Confrontation Clause issues, holding that the Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53–54, 124 S.Ct. 1354. The Court noted that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id.* at 50, 124 S.Ct. 1354. Accordingly, the Court emphasized that the command of the Confrontation Clause was "not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61, 124 S.Ct. 1354.

[¶ 11] *Crawford* made clear that the requirement of unavailability and cross-examination is separate from, and indeed paramount to, hearsay analysis, stressing that, "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence." *Id.*; *see also State v. Gorman*, 2004 ME 90, ¶ 46, 854 A.2d 1164, 1175 ("We have recognized that statements admissible under an exception to the hearsay rule may be inadmissible when tested against the Confrontation Clause of the United States Constitution because Confrontation Clause analysis differs from hearsay rule analysis."). In *Davis v. Washington*, the Court further clarified that the Confrontation Clause applies only to testimonial hearsay. 547 U.S. 813, 823–24, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

■ [¶ 12] Thus, Confrontation Clause analysis under *Crawford* and *Davis* requires that a court make two inquiries: (1) whether the proffered evidence is hearsay, and (2) if it is hearsay, whether the evidence is testimonial. *See Crawford*, 541 U.S. at 68, 124 S.Ct. 1354; *United States v. Earle*, 488 F.3d 537, 542 (1st Cir.2007). With regard to the first inquiry, both Tayman and the State agree that the certified records of the Secretary of State and the Violations Bureau constitute hearsay. Indeed, both records contain out of court statements offered to prove the truth of the matter asserted, specifically that Tayman was sent notice of his suspension. *See* M.R. Evid. 801(c).[3]

[¶ 13] As to the second inquiry, the *Crawford* Court declined to offer a comprehensive definition of "testimonial," but noted that statements that fell within exceptions to the right of confrontation that were established at the Framing of the U.S. Constitution were removed from Confrontation Clause analysis. *Crawford*, 541

---

**3.** Apart from the potential Confrontation Clause violation alleged by Tayman, however, the records would be admissible as public records pursuant to M.R. Evid. 803(8)(A), which, subject to exceptions not applicable here, excludes from the definition of hearsay:

   [R]ecords, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

U.S. at 54, 124 S.Ct. 1354; *see also Giles v. California*, 554 U.S. ——, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008) (vacating a criminal conviction on the ground that forfeiture by wrongdoing was not an established exception to the confrontation right at the Framing). To that end, the Court stated that most of the hearsay exceptions established at the Framing were nontestimonial by nature, including the exception for business records. *Crawford*, 541 U.S. at 56, 124 S.Ct. 1354. In concurrence, Chief Justice Rehnquist expanded upon this notion, clarifying that the Court's definition of testimonial excluded "business records and official records," and that "[t]o hold otherwise would require numerous additional witnesses without any apparent gain in the truth-seeking process." *Id.* at 76, 124 S.Ct. 1354 (Rehnquist, C.J., concurring).

[¶ 14] Against this backdrop, lower courts have considered whether various documents similar to those offered against Tayman are "testimonial" under *Crawford*. Without a comprehensive definition of the term, these courts have largely looked to the underlying purposes of the Confrontation Clause as emphasized by the *Crawford* Court, focusing on the circumstances under which the documents are created and the purposes for which they are offered.

[¶ 15] For example, the Supreme Court of Iowa recently held that a certified abstract of a defendant's driving record was nontestimonial and admissible without live testimony at trial when offered to prove that a defendant's driving privileges were revoked at the time of his arrest for driving under revocation. *State v. Shipley*, 757 N.W.2d 228, 237 (2008). The court noted that the defendant's driving record existed independently of any subsequent criminal prosecution, was generated by "government workers with no axe to grind who performed their routine, ministerial tasks in a nonadversarial setting," and was "thus created under conditions far removed from the inquisitorial investigative function—the primary evil that *Crawford* was designed to avoid." *Id.* at 238

[¶ 16] The Supreme Court of Washington similarly held that admission of a certified document stating that a defendant's license was suspended did not violate the Confrontation Clause. *State v. Kronich*, 160 Wash.2d 893, 161 P.3d 982, 986–87 (2007). The court stressed that the document was "not an accusatory statement or testimony" and emphasized that such records were not expressions of opinion or conclusions, but rather just a communication of the defendant's driving status, and thus not within the definition of testimonial evidence under *Crawford*. *Id.* at 987.

[¶ 17] In a separate opinion issued on the same day, the Washington Supreme Court applied similar reasoning to reject a Sixth Amendment challenge to the admission of a certified letter verifying that a defendant did not have a valid license to operate a motor vehicle within the state. *State v. Kirkpatrick*, 160 Wash.2d 873, 161 P.3d 990, 997–98 (2007). The court concluded that such a document contained only "verifiable facts, adduced by a government official in the regular course of his or her duties according to a standardized procedure," and that "certification that a license has not been issued to a particular defendant is not an accusatory statement or testimony." *Id.* at 997.

[¶ 18] Both of the recent Washington Supreme Court decisions emphasized that the *Crawford* Court's exclusion of business records from the definition of "testimonial" provided a basis to conclude that public records were similarly not within the purview of Confrontation Clause analysis. *Kronich*, 161 P.3d at 983; *Kirkpatrick*, 161 P.3d at 991. Both opinions also noted that requiring the testimony of record cus-

todians to admit driving records would produce a logistical burden without an accompanying benefit to the "truth-seeking process." *Kronich,* 161 P.3d at 987; *Kirkpatrick,* 161 P.3d at 997–98.

[¶ 19] Other jurisdictions, applying the same analysis as that in *Shipley, Kronich,* and *Kirkpatrick,* have concluded that various administrative documents similar to those offered against Tayman are nontestimonial. *See, e.g., Jackson v. United States,* 924 A.2d 1016, 1022 (D.C.2007) (holding that docket entries and a notice of return to court were "created in the regular course of court operations, primarily for administrative purposes rather that with a primary eye towards future prosecution," and thus were nontestimonial); *State v. Dukes,* 38 Kan.App.2d 958, 174 P.3d 914, 918 (2008) (holding that the introduction in evidence of driving records does not offend *Crawford* because the records are maintained pursuant to state law and reflect ministerial duties unrelated to criminal prosecution); *Jasper v. Commonwealth,* 49 Va.App. 749, 644 S.E.2d 406, 410–11 (2007) (concluding that a DMV transcript offered to prove revocation and notice of revocation was nontestimonial because the document established only the existence of objective facts, was not accusatory, and was prepared in a nonadversarial setting); *State v. King,* 213 Ariz. 632, 146 P.3d 1274, 1280 (Ct.App.2006) (holding that driving records are nontestimonial because they are "akin to business records, and are prepared and maintained regardless of their possible use in a criminal prosecution").

[¶ 20] Conversely, in *People v. Pacer,* the Court of Appeals of New York held that the introduction in evidence of an affidavit prepared by an official of the Department of Motor Vehicles describing the department's license revocation and mailing procedures violated the Confronta-tion Clause. 6 N.Y.3d 504, 814 N.Y.S.2d 575, 847 N.E.2d 1149 (2006). The affidavit, which was the only proof of notice offered by the State, indicated that, on the official's "information and belief," ordinary mailing procedures had been followed in the defendant's case. *Id.* 814 N.Y.S.2d 575, 847 N.E.2d at 1151. The court stressed that the affidavit was a "direct accusation of an essential element of the crime" and that the affiant was "the closest the People come to having a 'witness' to prove that defendant knew or should have known of the revocation." *Id.* 814 N.Y.S.2d 575, 847 N.E.2d at 1152. The court noted that, faced with such evidence and without a live witness, "defendants have no means of challenging the People's proof on a critical element … [and] no chance to inquire about the *basis* for the affiant's 'information and belief' " that notice had been mailed, concluding that "[t]his is exactly the evil the Confrontation Clause was designed to prevent." *Id.* 814 N.Y.S.2d 575, 847 N.E.2d at 1153–54.

[¶ 21] We agree with the reasoning of the majority of jurisdictions that have considered this issue and concluded that the introduction of records similar to the Violations Bureau docket entries offered against Tayman are akin to business or public records, and that such documents merely reflect the routine cataloging of administrative events. Unlike the affidavit objected to in *Pacer,* the court's docket entries at issue here represent the mere contemporaneous documentation of regular business activity within the Violations Bureau and do not contain assertions or accusations made after the fact and in preparation for litigation. As such, these entries do not implicate the core Confrontation Clause concerns addressed by the *Crawford* Court.

[¶ 22] In addition, it is difficult to ascertain a benefit that would result from

requiring the live testimony of a custodian of the records in these circumstances. Indeed, it is unrealistic to expect that such a witness would recall any relevant details regarding actions taken in Tayman's case. As Chief Justice Rehnquist clarified in his *Crawford* concurrence, "cross-examination is a tool used to flesh out the truth, not an empty procedure." *Crawford*, 541 U.S. at 74, 124 S.Ct. 1354 (Rehnquist, C.J., concurring). To require live testimony regarding the ministerial acts at issue in this instance would not serve to promote the fundamental constitutional protections identified in *Crawford*.[4]

[¶ 23] With regard to the Secretary of State's certification, we note that Tayman did not object to this document at trial. We have made clear that, "[e]ven when a claim of error implicates a criminal defendant's constitutional rights, if the defendant failed to object at trial, the issue is unpreserved and we will upset the trial court's decision only if the error was obvious." *State v. Barnes*, 2004 ME 105, ¶ 5, 854 A.2d 208, 209–10. An error is obvious if it constituted a "substantial injustice or affected the defendant's substantial rights." *Id.* ¶ 5, 854 A.2d at 210.

[¶ 24] To be sure, the certification of the Secretary of State was created in response to the State's request and in anticipation of Tayman's trial. That fact, however, is not determinative in this instance. The certification serves only to confirm the authenticity of the underlying records of the Bureau, which themselves contain only routine, nontestimonial information. *See United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir.2005) (holding that a certification of the Secretary of State is nontestimonial and a "'routine cataloging of an unambiguous factual matter'" (quoting

*United States v. Bahena–Cardenas*, 411 F.3d 1067, 1075 (9th Cir.2005))); *Shipley*, 757 N.W.2d at 239 ("The purpose of offering the certification is not to avoid cross-examination or to advance an inquisition, but only to allow the admission of an underlying record that was prepared in a nonadversarial setting prior to the institution of the criminal proceeding."); *Jasper*, 644 S.E.2d at 410–11 (holding that certification of DMV transcript does not violate *Crawford* because it is prepared in nonadversarial setting and merely summarizes documents that are themselves not prepared in anticipation of litigation); *see also Earle*, 488 F.3d at 544–45 (noting that certificates of authenticity were admissible at common law). We find nothing in the admission of the Secretary of State's certification that offends *Crawford* or implicates the Confrontation Clause.

[¶ 25] We have previously clarified that "[t]he appropriate application of the principles expressed in *Crawford* will require detailed attention to the specific facts in each case." *Barnes*, 2004 ME 105, ¶ 12, 854 A.2d at 212. Here, the admission of the Violations Bureau docket entries and the certification of the Secretary of State without live testimony did not, on the record before us, violate Tayman's Sixth Amendment confrontation rights.

The entry is:

Judgment of conviction affirmed.

MEAD, J., with whom GORMAN, J. joins, dissenting.

[¶ 26] I respectfully dissent.

[¶ 27] Although I agree with the Court's determination that the application of *Crawford* does not prohibit the introduction of the documentary evidence at

---

4. In holding that the exhibits offered against Tayman were admissible without live testimony, we in no way suggest that defendants are prohibited from challenging the accuracy of the mailing procedures or any other aspect of the State's proof at trial.

issue, I would conclude that the evidence presented is simply insufficient to support the conviction. The Court today confirms the well-established rule that the elements of the offense of operating after suspension include the requirement that the State allege and prove that notice of the suspension was given to the defendant as provided by statute. In the particular circumstances of this case, as the Court recognizes, the applicable statute provides that notice of the suspension is sufficient if sent by regular mail to the last known name and address provided by a person:

(a) on a Violation Summons and Complaint;

(b) in a written answer to a Violation Summons and Complaint;

(c) in a written pleading filed with the Violations Bureau; or

(d) if the person has not provided an address, to the address shown on a Violation Summons and Complaint that has been served on the person.

*See* 29–A M.R.S. § 2608 (2007).

[¶ 28] A certificate of the Secretary of State confirming the required notice must be accepted by a court "as prima facie evidence of any fact stated in the certificate or documents attached to the certificate." 29–A M.R.S. § 113(3) (2007). In this matter, the certificate duly confirms that notice was sent by regular mail to Tayman. The first part of the notice element was thus satisfied. The certificate is devoid, however, of any mention of *where* the notice was sent by regular mail. It states only that the notice was sent "by regular mail to [Tayman] ... pursuant to 29–A MRSA Section 2608." Although it would have been a simple matter for the Secretary of State to add in the certificate

that notice was sent to one of the addresses enumerated above, or to simply attach a copy of the notice to the certificate, he did not do so.[5]

[¶ 29] While it may be tempting to assume that the court clerk used the address from the Violation Summons and Complaint in this case, an assumption does not constitute proof beyond a reasonable doubt. If, for example, the clerk transmitted the notice by regular mail to an address on a bail bond, an address maintained in the court's computerized record bank (MEJIS), an address supplied by a third person, or to an address obtained from some other source, then the notice would not satisfy section 2608 and would fail as an element of proof. Here, the State was required to prove that the address used by the clerk was provided by Tayman in one of the ways specified by section 2608, or that the Violation Summons and Complaint showing the address used by the clerk was served on Tayman. For either alternative, such proof could have been easily presented by the State, but it chose not to do so. Instead it stood on the four corners of the certificate—a certificate which fails to establish an express and essential element of the offense charged here.

[¶ 30] As the State is bound to prove each and every element of a criminal offense beyond a reasonable doubt, and it has failed to do so here, I would vacate the conviction.

---

5. The more common practice is to attach a copy of the Violation Summons and Complaint to the certificate, which, if it had happened here, would have satisfied the address element.