THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDDIE ABELO, Appellant. [914 NYS2d 54]—

Judgment, Supreme Court, Bronx County (Ralph A. Fabrizio, J.), rendered January 18, 2007, convicting defendant, after a nonjury trial, of aggravated unlicensed operation of a motor vehicle in the second degree, and sentencing him to a term of 60 days with three years' probation and a $1,500 fine, reversed, on the law, and the matter remanded for a new trial.

The conviction should be reversed and the matter remanded for a new trial on the ground that it was error to admit the notice of suspension mailed in 1992. As the trial court found, the People were required to demonstrate that "defendant had or should have had knowledge of the fact that his license was

suspended or revoked" (14 Misc 3d 818, 828 [2006]; *see* Vehicle and Traffic Law § 511 [2] [a] [iv]). While the remaining evidence was sufficient to establish that he was driving with a suspended license in 2005, the foregoing error was not harmless and thus a new trial is required.

On October 25, 2005, defendant was stopped by a police officer because his car had a broken front headlight. Upon checking his registration and what appeared to be a valid license in the central dispatch system, the officer learned that defendant's license was suspended based on 1992 and 1993 unpaid fines. He was then charged with aggravated unlicensed operation of a motor vehicle (Vehicle and Traffic Law § 511 [2] [a] [iv]) because he had more than three open suspensions.

The Department of Motor Vehicles (DMV) issued numerous suspensions to defendant in 1992 and 1993 for failure to pay fines for various parking violations and traffic infractions. In 1996, defendant surrendered his New York State license in order to obtain a Pennsylvania license. In 1997, he applied for and was issued a New York license using all of his identifying information. In 1998, he again surrendered his New York State license for a Pennsylvania license but surrendered his Pennsylvania license for a New York license in 2001. He again applied for a New York license in 2004 after surrendering a Pennsylvania license. On the application for the 2001 license, he used his mother's name, Melendez, while he used Abelo, on his 2004 application. None of these applications was rejected based on his having had a previously suspended license, and New York licenses were issued. In 2004 and 2005, defendant incurred traffic violations and suspensions were issued, but they were lifted after defendant paid the fines. Defendant also took two courses in accident prevention that were designed to lower insurance rates and achieve points reduction on his license in September 2005. This circumstantial evidence, although not overwhelming, would have been sufficient to support defendant's conviction.

The evidence which gives rise to the trial error was the testimony of one Kimberly Shaw, a customer representative for the DMV, who was first employed in 2002. She testified to mailing procedures at DMV. Shaw testified that based on an abstract generated on November 23, 2005, defendant's license had been suspended 57 times on 16 dates between 1983 and 1994 for unpaid tickets. Shaw testified that a driver's license suspension is mailed to the address on file at the DMV, that such a mailing had occurred in December 1992, and that defendant's license was suspended on January 4, 1993. The court admitted the 1992 notice of suspension. On cross-examination Shaw acknowl-

edged that she did not work for DMV in 1992, and could not testify concerning standard mailing procedures during that year or those in place in 1993. She also acknowledged that procedures had changed. The court then refused to admit the 1993 suspension notices because Shaw was not familiar with the business practices in place at that time or earlier, but it refused to strike the already admitted 1992 notice.

Defense counsel moved to dismiss the charge on the ground that the People failed to prove that defendant knew or had reason to know that his license was suspended or that he knew he had three or more suspensions. In *People v Pacer* (6 NY3d 504 [2006]), the Court of Appeals held that documentary evidence of a license suspension was inadequate and violated the Confrontation Clause as in *Crawford v Washington* (541 US 36 [2004]) because the affidavit in *Pacer* was a testimonial statement. The Court stated that, without an opportunity to cross-examine the affiant, defendant was unable to challenge the People's proof on a critical matter.

The People here argue that, having produced Kimberly Shaw, they satisfied their obligation to produce a witness who was subject to cross-examination. While defendant acknowledges that it was clearly not necessary to produce someone who was employed at the time the notice was mailed, he argues that the People were obligated to produce someone who had at least familiarized herself with the procedures current at the time. Moreover, as defendant argues, the trial court's refusal to admit the 1993 notices of suspension because Ms. Shaw was unfamiliar with the mailing practices in 1993 was inconsistent with admission of the 1992 notice of suspension. The witness made it clear that she was not familiar with the practice in either year.

At the outset, we reject defendant's claim that the statute under which he was convicted, Vehicle and Traffic Law § 511 (2) (a) (iv), aggravated unlicensed operation of a motor vehicle in the second degree, requires knowledge that one is driving with three license suspensions. Although the aggravating factor is that there were three or more suspensions, the statute only requires knowledge or reason to know of one such suspension, not of three suspensions.

However, the only basis for admitting the required notice of suspension was the testimony of a witness who was not qualified to testify concerning procedures in use at the time that the notice was sent. Admitting such evidence contravenes the rationale of *People v Pacer* (6 NY3d 504 [2006], *supra*). A witness who on cross-examination denies knowing what procedures were used at the time of mailing does not satisfy the obligation to

produce a witness who can be adequately cross-examined concerning notice to defendant. In essence, the notice of suspension was admitted without foundation, and under the facts of this case its admission constituted reversible error.

The fact that DMV continued to issue him new and facially valid licenses upon the surrender of his Pennsylvania licenses renders the circumstantial evidence that defendant knew he was driving with a suspended license less than overwhelming. For this reason, the aforementioned error in admitting the notice of suspension cannot be deemed harmless and the matter must be remanded for a new trial. Concur—Friedman, J.P., Freedman and Manzanet-Daniels, JJ.

Nardelli and DeGrasse, JJ., dissent in a memorandum by DeGrasse, J., as follows: I respectfully dissent and would affirm the judgment of conviction. The crime of second-degree aggravated unlicensed operation of a motor vehicle has a mens rea element. Conviction requires proof that, among other things, a defendant knew or had reason to know that his or her driving privileges in this state have been suspended, revoked or otherwise withdrawn by the Commissioner of Motor Vehicles (Vehicle and Traffic Law § 511 [2]). Defendant's driving abstract, a business record of the Department of Motor Vehicles (DMV), established that his driver's license had been revoked, with 61 suspensions in effect at the time of his arrest in October 2005. To establish defendant's mens rea, the People called Kimberly Shaw, a DMV customer service representative, as a witness. On Shaw's examination, a driver's license suspension order dated December 19, 1992 was admitted in evidence. Shaw testified that DMV's practices in 1992 required that the suspension order be mailed to the address of the motorist on file with DMV. This suspension order reflected that defendant's license was suspended on January 4, 1993. After the 1992 suspension order was received in evidence, the court conducted a voir dire as to three 1993 notices of suspension. On voir dire, Shaw testified that she was not familiar "with the business practices and the generation of business records as it was in 1993 [*sic*]." Based on that concession, the court sustained defendant's objection to the three additional notices of suspension. At the conclusion of the People's case, defendant unsuccessfully moved for a trial order of dismissal on the ground that the People failed to prove that he knew or had reason to know that his license had been suspended at the time of his arrest.

Citing *People v Pacer* (6 NY3d 504 [2006]), defendant and the majority posit that Shaw's testimony regarding the 1992 suspension order violated the Confrontation Clause in light of her

concession that she was not familiar with DMV's 1993 business practices. The argument misinterprets the holding in *Pacer*. The *Pacer* Court held that a defendant's right of confrontation was violated by the prosecution's introduction of an affidavit prepared for trial as opposed to live testimony to prove that DMV had previously mailed a notice or license revocation to that defendant. The Court reasoned that a defendant faced with nothing more than an affidavit has no means of challenging the prosecution's proof on mens rea, an element of the crime charged (*id.* at 512). By contrast, Shaw's testimony in this case provided defendant with an undeniable opportunity to exercise his confrontation right. As noted above, defendant claims that his right of confrontation was violated due to Shaw's unfamiliarity with DMV's 1993 practices. On this score, it is noteworthy that the *Pacer* Court observed that past agency practices is an avenue of inquiry that can be pursued with a live witness as opposed to an affidavit (*id.*). Accordingly, there was no violation of defendant's right of confrontation.

I would also reject defendant's argument that his conviction was not supported by legally sufficient evidence that he knew or had reason to know of the 1992 suspension of his license. Evidence is legally sufficient when a valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the factfinder on the basis of the trial evidence, viewed in the light most favorable to the People (*People v Williams*, 84 NY2d 925 [1994]). Notwithstanding her testimony on voir dire, Shaw's direct examination viewed with the driving abstract and the 1992 suspension notice provides the requisite valid line of reasoning. Evidence need not be unassailable to be legally sufficient as long as a valid line of reasoning for the factfinder's conclusion exists. Moreover, the trial court's conclusion is also supported by circumstantial evidence of defendant's knowledge of the suspension of his license.

As reflected by the driving abstract, in 2001, defendant used an alias to obtain a New York State license, exchanged that license for a Pennsylvania license and then obtained another New York State license in exchange for the Pennsylvania license.* Shaw testified that even if a motorist's license has been revoked, DMV will issue a new driver's license under a different identification number if an application for one is made under a different name. By analogy, a defendant's use of an alias upon arrest constitutes evidence of consciousness of guilt (*see People v Severino*, 200 AD2d 522 [1994], *lv denied* 84 NY2d

---

* In all, defendant exchanged driver's licenses between the states of New York and Pennsylvania six times between 1996 and 2004.

832 [1994]; *People v Theiss*, 198 AD2d 17 [1993]). Accordingly, the trial court properly inferred that defendant obtained driver's licenses under an alias because he knew that his New York State driver's license had been suspended or revoked. Even if erroneous, the receipt in evidence of the 1992 suspension order was harmless. I reach this conclusion upon consideration of the evidence that defendant used an alias and traded licenses between New York and Pennsylvania on numerous occasions (*see e.g. People v Carney*, 41 AD3d 1239 [2007], *lv denied* 9 NY3d 873 [2007]). As noted above, this circumstantial evidence provides the requisite valid line of reasoning for the court's conclusion that defendant knew his license had been suspended.

Like the majority, I reject defendant's argument that the statute under which he was convicted requires proof that he knew or had reason to know of more than one license suspension (*see* Vehicle and Traffic Law § 511 [2]). I would also find defendant's remaining contentions unavailing (*see People v Correa*, 15 NY3d 213 [2010]). **[Prior Case History: 14 Misc 3d 818.]**