The People of the State of New York, Respondent,
against
Jonathan Flores, Appellant.


Nassau County Legal Aid Society (Marquetta Christy of counsel), for appellant.
Nassau County District Attorney (Yael V. Levy and Sarah S. Rabinowitz of counsel), for respondent.

Appeal from six judgments of the District Court of Nassau County, First District (Eric Bjorneby, J., at pretrial hearings; Frank A. Doddato, J., at trial and sentencing), rendered October 19, 2015. The judgments convicted defendant, upon jury verdicts, of driving while intoxicated (common law), aggravated unlicensed operation of a motor vehicle in the third degree, failing to signal before turning, driving without a license, operating an unregistered motor vehicle, and operating a motor vehicle with an expired inspection certificate, respectively, and imposed sentences.
ORDERED that the judgment convicting defendant of common-law driving while intoxicated is reversed, on the law, and, as a matter of discretion in the interest of justice, the accusatory instrument alleging the offense is dismissed; and it is further,
ORDERED that the judgments convicting defendant of aggravated unlicensed operation of a motor vehicle in the third degree, failing to signal before turning, driving without a license, operating an unregistered motor vehicle, and operating a motor vehicle with an expired inspection certificate are affirmed.
On September 19, 2013, the People charged defendant, in simplified traffic informations, with aggravated unlicensed operation of a motor vehicle in the third degree (Vehicle and Traffic [*2]Law § 511 [1] [a]), failing to signal before turning (Vehicle and Traffic Law § 1163 [a]), driving without a license (Vehicle and Traffic Law § 509 [1]), operating an unregistered motor vehicle (Vehicle and Traffic Law § 401 [1]), operating a motor vehicle with an expired inspection certificate (Vehicle and Traffic Law § 306 [b]), and driving while intoxicated (per se) (Vehicle and Traffic Law § 1192 [2]), after a chemical test of defendant's blood alcohol content allegedly produced a reading of .13 of one per centum by weight. On February 5, 2014, the police officer who had administered defendant's blood alcohol test passed away. On February 14, 2014, the People charged defendant, in an information, with driving while intoxicated (common law) (Vehicle and Traffic Law § 1192 [3]). Two additional Vehicle and Traffic Law charges were dismissed by the People prior to trial and a third was dismissed after trial.
At a jury trial, the People produced, as witnesses, a retired breath test operator who had been present at the police testing facility during defendant's breath test but had not witnessed the test, and the arresting officer, who had observed defendant during the pre-test observation period and who had received the written 12-step test preparation checklist and the test results printout from the testing officer immediately after the test. The defense objected to the competence of the substitute witness to testify as to the foundation requirements for the admission of the test results. The People also produced an employee of the Department of Motor Vehicles (DMV), who testified to her experience with the procedures employed by the DMV to generate and mail license suspension notices. The defense objected to this testimony as insufficient to support the charge of aggravated unlicensed operation of a motor vehicle in the third degree absent proof that the witness had been employed by the Albany office of the DMV at the time the notices had been issued and had personal knowledge of the actual production and mailing to defendant of license suspension notices. Following the trial, the jury acquitted defendant of driving while intoxicated per se and convicted him of common law driving while intoxicated, aggravated unlicensed operation of a motor vehicle in the third degree, failing to signal before turning, driving without a license, operating an unregistered motor vehicle, and operating a motor vehicle with an expired inspection certificate.
With respect to the judgment convicting him of common-law driving while intoxicated, defendant argues that the information alleging that charge is jurisdictionally defective in that it fails to establish, prima facie, that he was "incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (People v Cruz, 48 NY2d 419, 428 [1979]); that the admission of proof of the breath test result violated his Confrontation Clause rights and fatally prejudiced his defense of the charge of common law driving while intoxicated; and that, in any event, the foundation for the test's admission was legally insufficient absent sufficient proof of the integrity of the 20-minute pre-test observation period and that the simulator solution temperature was in the proper range. With respect to the judgment convicting defendant of aggravated unlicensed operation of a motor vehicle in the third degree, defendant argues that the DMV witness failed to establish her knowledge of the DMV procedures concerning the issuance of license suspension notices that were in effect at the time the suspensions were imposed. Defendant also challenges the guilty verdicts on the remaining convictions, arguing that they were against the weight of the evidence. The Court of Appeals has recently summarized the standard of review for the factual sufficiency of an information as follows:
"[T]he factual part of a facially sufficient misdemeanor information must show 'reasonable cause' that a 'prima facie' case exists against the defendant (People v Kalin, 12 NY3d 225, 229 [2009]; CPL 100.15, 100.40). 'Reasonable cause' exists when 'evidence or information which appears reliable discloses facts or circumstances' adequate 'to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that' defendant committed the offense (CPL 70.10 [2]). 'So long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading' (People v Casey, 95 NY2d 354, 360 [2000])" (People v Andujar, 30 NY3d 160, 168 [2017]).
An information's purpose is simply to "ensure[ ] that a legally sufficient case can be made against the defendant" (People v Dumay, 23 NY3d 518, 522 [2014]), and, absent a timely objection, a defendant waives any hearsay defects in the information's factual assertions (see People v Keizer, 100 NY2d 114, 121 [2003]; People v James, 49 Misc 3d 154[A], 2015 NY Slip Op 51791[U], *1 [App Term, 2d Dept, 9th & 10th Jud Dists 2015]).
The facts supporting the information, contained in the combined "DWI Supporting Deposition and Bill of Particulars" (see CPL 100.15 [3]; 100.40 [1]; 100.20; People v Dumas, 68 NY2d 729, 731 [1986]; People v Sanson, 59 Misc 3d 4, 6 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2018]), are that, shortly after 4:00 a.m. on September 19, 2013, defendant was observed repeatedly committing Vehicle and Traffic Law violations while operating his motor vehicle, specifically, turning and changing lanes without signaling. Upon being stopped, defendant exhibited watery, glassy, and bloodshot eyes, and the arresting officer detected the odor of an alcoholic beverage on defendant's breath. A portable breath test administered at the arrest scene produced a reading of .14 of one per centum by weight. The allegations concerning the traffic violations permit an inference of diminished capacity for exercising driving judgment, and the indicia of alcoholic beverage consumption observed by the arresting officer are consistent with intoxication. The portable breath test result, while inadmissible at a trial to prove intoxication (see e.g. People v Krut, 133 AD3d 781, 784-785 [2015]), may support an inference of reasonable cause (see People v Kulk, 103 AD3d 1038, 1040 [2013]; People v Hogue, 136 AD3d 1351, 1353 [2016]). "[A]s a matter of common sense and reasonable pleading" (People v Davis, 13 NY3d 17, 31 [2009]), the factual allegations suffice to support an inference that it is "reasonably likely" (CPL 70.10 [2]) that defendant committed the offense of common law driving while intoxicated.
However, the results of defendant's blood alcohol test conducted at the Central Testing Section of the Nassau County Police Department Headquarters were admitted into evidence in violation of defendant's Confrontation Clause protections. "[B]reathalyzer results [may] be admitted in evidence [if] the People . . . establish that the machine is accurate, that it was working properly when the test was performed and that the test was properly administered" (People v Campbell, 73 NY2d 481, 484 [1989]; see e.g. People v Murphy, 101 AD3d 1177, 1178 [2012]; People v Morren, 52 Misc 3d 132[A], 2016 NY Slip Op 51005[U], *2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2016]). The last condition is satisfied by proof of "the manner in which the instrument had been activated, the procedure the officer had employed to run the [*3]instrument's self-diagnostic and self-calibrating pre-test functions, the adequacy of the observation period, and the propriety of the manner in which he [or she] had obtained a breath sample" (People v Bankupally, 51 Misc 3d 144[A], 2016 NY Slip Op 50710[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2016] [internal quotation marks and citations omitted]).
In People v John (27 NY3d 294 [2016]), the Court of Appeals held that "[a]n analyst who witnessed, performed or supervised the generation of [a DNA] profile, or who used his or her independent analysis on the raw data, as opposed to a testifying analyst functioning as a conduit for the conclusions of others, must be available to testify" (id. at 315 [emphasis added]). In People v Hao Lin (28 NY3d 701 [2017]), which reviewed the admissibility of a breath test, the Court determined that the Confrontation Clause had not been violated in the John sense, because the testifying police witness
"[had] observed [the absent witness] perform all of the steps on the checklist and saw the breathalyzer machine print out the results. Based upon his personal observations [the witness]—as a trained and certified operator who was present for the entire testing protocol—was a suitable witness to testify about the testing procedure and results in defendant's test. Inasmuch as [he] testified as to his own observations, not as a surrogate for [the absent witness], there was no Confrontation Clause violation. Any alleged irregularities concerning the testing procedure would relate to the weight of [the witness's] testimony, not its admissibility" (id. at 707).
The Court further stated:
"Inasmuch as the written 13-step checklist completed by [the absent witness] was not admitted into evidence, no testimonial statement by a nontestifying witness concerning the [simulator solution] temperature—or any aspect of the testing procedure—was used against defendant. Thus, any argument as to [the witness's] failure to observe the temperature reading would merely relate to whether there was a proper foundation for his testimony, which would not implicate a Confrontation Clause violation" (id.).
As for the issue of the testing instrument's capacity to self-abort a testing procedure and to shut down, the Court of Appeals noted in Hao Lin that the witness had testified as to his opportunity to hear a "tone," that is, an "error sound" produced by the instrument if a "problem" had occurred in the procedure, either during its preparation for the test or in the course of the test itself, and that the witness had heard no tone during either stage of the procedure. Consequently, the Court concluded, the jury could properly infer that the simulator solution temperature was within the proper range and that the breath sample was sufficient to permit accurate testing (id.).
Here, the People presented a witness who testified that only defendant and the tester had been present in the testing room during defendant's test, and that he had received from the tester, immediately after the test, the originals of the 12-point checklist initialed and signed by the tester, and the test results printout. The People also produced a witness who, while also neither a
participant in, nor an observer of, defendant's test, provided the foundation testimony for the admission of the calibration and maintenance documents which established that, on September 19, 2013, the testing device had been functioning properly. However, what remained to be [*4]proven was that the actual test administered to defendant had been properly performed, an issue with two dimensions, whether the device had been properly prepared to analyze defendant's blood alcohol content, and whether defendant had provided a sufficient and unadulterated breath sample for analysis. Unlike in Hao Lin, no witness observed the testing procedure or was positioned to detect whether the instrument audibly signaled that a problem had arisen with respect to the instrument's capacity to accurately measure defendant's blood alcohol content. Thus, here, the written 12-step checklist represents a "testimonial statement by a nontestifying witness," and its admission violated defendant's Confrontation Clause rights, as there was absent testimony as to firsthand observations of the 12-step procedure actually carried out and whether the device had produced error tones. The Hao Lin record also included a videotape exhibit which "show[ed] that the machine continued to operate and produced a result" (id.). Defendant's test was not videotaped.
We also cannot agree that the test results printout represented "raw data" amenable to interpretation by any witness qualified to testify as to the relationship between blood alcohol test results, the test subject's alcohol level, and the subject's state of actual intoxication. The information thereon included the identity of the testing subject and the test administrator, the time of the test, the fact that the instrument passed the "diagnostic," "air blank," and "calibration" tests, and the test result itself. While not testimonial in nature (see id. at 706), the printout is not admissible for the truth of its contents absent foundation testimony as to the test preparation procedure that preceded it; otherwise, the mere fact that it was produced would validate the procedure itself. While another witness's competence to offer expert interpretation of the relationship between the test results and defendant's actual blood alcohol content was established at the trial (see People v Brown,13 NY3d 332, 340 [2009]), the substitute witness's interpretation is of no weight in the absence of testimony by a trained observer as to the procedure employed to activate and operate the device's self-diagnostic and self-calibrating pre-test functions, and to determine, aided by the absence of "audible" signals, that, in fact, the instrument had passed those diagnostic and calibrating functions and that "the test was properly performed on the particular [evidence] sample taken from defendant" (People v Grune, 12 AD3d 944, 945 [2004]; see e.g. People v Torres,156 AD3d 518 [2017]). Such proof, which also serves to confirm that the breath sample was of testable quality (see People v Bankupally,51 Misc 3d 144[A], 2016 NY Slip Op 50710[U], *2), was entirely absent here. In light of the foregoing, we need not address defendant's arguments concerning the sufficiency of the 20-minute observation period which, in any event, are without merit (see e.g. People v Jones, 50 AD3d 1058, 1059 [2008]; People v Broomfield, 55 Misc 3d 137[A], 2017 NY Slip Op 50506[U], *2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017]). 
A blood alcohol measurement resulting from an admissible testing procedure, while insufficient standing alone to establish actual intoxication in violation of Vehicle and Traffic Law § 1192 (2), is nevertheless admissible at trial as evidence of actual intoxication, that is, guilt of violating Vehicle and Traffic Law § 1192 (3) (see e.g. People v Broomfield, 55 Misc 3d 137[A], 2017 NY Slip Op 50506[U], *2; People v Williams, 55 Misc 3d 134[A], 2017 NY Slip Op 50478[U], *3 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017]; People v Crane, 35 Misc 3d 132[A], 2012 NY Slip Op 50695[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2012]). During the jury charge, the court instructed the jury that, in addition to the physical [*5]indicia of intoxication that may be exhibited by an intoxicated person, they may consider, as proof of common-law driving while intoxicated, "the results of any test of the content of alcohol in the defendant's blood" (see e.g. People v Baker, 51 AD3d 1047, 1050 [2008]; People v Griesbeck, 17 AD3d 717, 718 [2005]). However, as the blood alcohol test results were admitted in violation of defendant's Confrontation Clause rights, we must determine whether the error, in light of the remaining evidence, is harmless. Harmless error review "requires an appellate court to assess the quantum and nature of the People's proof of guilt independent of erroneously admitted evidence and the causal effect, if any, that the introduction of that evidence had on the factfinder's verdict" (People v Wells, 21 NY3d 716, 718 [2013]; e.g. People v Wilkins, 52 Misc 3d 72, 74 [App Term, 2d Dept, 9th & 10th Jud Dists 2016]). The admission of the test results may be considered harmless "only if the evidence of guilt, without reference to the error, is overwhelming, and there is no reasonable possibility that the error might have contributed to the defendant's conviction, such that it is harmless beyond a reasonable doubt. . . . It has been recognized that this rigorous standard . . . places a heavy burden on the prosecution . . . and represents perhaps the most demanding test yet formulated" (People v Thompson, 111 AD3d 56, 67 [2013] [internal quotation marks and citations omitted]; see e.g. People v Porco, 17 NY3d 877, 878 [2011]; People v DeRaffele, 54 Misc 3d 1, 5-6 [App Term, 2d Dept, 9th & 10th Jud Dists 2016]).
The trial proof of actual intoxication included multiple driving errors, the physical indicia of watery, glassy, and bloodshot eyes, the odor of an alcoholic beverage on defendant's breath, defendant's inadequate performance of standardized field sobriety tests, and an admission as to alcoholic beverage consumption. However, even in cases where it was error of a nonconstitutional nature to admit a blood alcohol test result, a high reading relative to the evidentiary threshold for per se intoxication may present so high a risk of having contributed to the conviction as to require reversal notwithstanding that the untainted evidence of actual intoxication may represent proof beyond a reasonable doubt (see e.g. People v Baker, 51 AD3d at 1050; People v Wilkins, 52 Misc 3d at 74-75; People v Grennon, 36 Misc 3d 33, 35-36 [App Term, 2d Dept, 9th & 10th Jud Dists 2011]; see also People v English, 103 AD2d 979, 980 [1984]). On the present record, we cannot say that there is no reasonable possibility that the error affected the jury's verdict. Consequently, we reverse the judgment convicting defendant of common-law driving while intoxicated. Since defendant has served his sentence on this judgment of conviction, and because, in the totality of the circumstances, we perceive no penological purpose in remitting the matter for a new trial (see People v Allen, 39 NY2d 916 [1976]), as a matter of discretion in the interest of justice, we dismiss the accusatory instrument charging defendant with common law driving while intoxicated.
We do not agree that the testimony of the DMV employee was insufficient to establish that defendant had timely received license suspension notices. To establish such receipt, a witness must establish personal knowledge of the DMV's mailing practices and procedures, at the time the suspension notices had allegedly been mailed, to permit meaningful cross-examination as to the nature of those procedures and whether they had actually been followed in the defendant's case (see e.g. People v Francis, 114 AD3d 699, 700 [2014]). Here, the witness testified that she had been employed by the DMV for over 21 years, a portion of which was at "the issuing office upstate," that is, at the DMV headquarters in Albany, and, for over 8 years, as [*6]a manager in a DMV office on Long Island. She described her extensive "exposure and experience" with the "central office mail room" in Albany, and she asserted knowledge of the contents of the "training manual that covers mail." She examines abstracts of driving records "[e]very day of [her] working life," and she identified a People's exhibit to be a DMV computer-generated abstract of defendant's driving records, the authenticity of which were certified by "the former commissioner" of the DMV, and she provided the business record foundation for the exhibit's admission into evidence. She also stated that the DMV assigns a random number to every individual to prevent confusion with respect to persons with the same name to whom notices might inadvertently be sent (see People v Pacer, 6 NY3d 504, 512 [2006]). The witness asserted personal familiarity with the mailing of license suspension notices, and she identified certain of the People's exhibits to be records of suspension notices that had been issued to defendant, which had been in effect on September 19, 2013. She described in detail the use of a bar code system to document mailing, and that the actual mailing of the notices to defendant was confirmed by the exhibits. She also described the procedures at the DMV mail room for delivery of notices to the post office on a daily basis but acknowledged that she had not been personally involved in the creation and issuance of defendant's suspension notices. If a notice is returned as "undeliverable," a notation of same is made in boldface on the mailing record. Defendant's mailing records do not contain any such notations. 
Defendant insists that the witness was unqualified to testify as to the DMV's procedures and practices with respect to the generation and mailing of suspension notices in effect at the time defendant's license had been suspended (see People v Abelo, 79 AD3d 668, 670 [2010]). However, it is not necessary that an employee who actually generated and mailed the suspension notices testify (see id.), or that the employee have personal knowledge of the actual production of defendant's driving record. It is sufficient that the employee have knowledge of the practices and procedures for producing driving records sufficient to identify a defendant's particular records, to affirm that they represent the DMV's business records, to interpret the contents of the forms based on that knowledge, and to describe the DMV's practices with respect to the mailing of suspension notices at the time relevant to the offense charged. Knowledge of the DMV's mailing procedures and practices cannot be established by a DMV official employed at another office absent knowledge of the specific procedures and practices employed at the issuing DMV office (see e.g. People v Francis, 114 AD3d 699, 700 [2014]; People v Fields, 58 Misc 3d 133[A], 2017 NY Slip Op 51786[U], *1 [App Term, 1st Dept 2017]; People v Kennedy, 50 Misc 3d 130[A], 2015 NY Slip Op 51916[U], *1 [App Term, 1st Dept 2015]; People v Outram, 22 Misc 3d 131[A], 2009 NY Slip Op 50162[U], *2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2009]; see also People v Maldonado, 42 Misc 3d 81, 86 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013] [proof sufficient where a 20-year DMV employee testified that the suspension notices "had been generated, and mailed . . . in accordance with the standard office practices and procedures of the DMV"]) at the time the defendant's license was suspended (see People v Abelo, 79 AD3d at 670; People v Kennedy, 50 Misc 3d 130[A], 2015 NY Slip Op 51916[U], *1). While the witness did not testify as to the particular period of time that she had worked in the Albany office, she established knowledge as to the procedures employed there "at the time the notice[s had been] sent" (People v Abelo, 79 AD3d at 670). This testimony sufficed to support the admission of proof that multiple license suspension notices had been mailed to defendant and [*7]that, as of the date of the offense charged, defendant knew that his license had been suspended (cf. People v Stokeling, 165 AD3d 1180 [2018]; People v Darrisaw, 66 AD3d 1427 [2009]).
In the exercise of this court's authority to review the weight of the evidence (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342, 348 [2007]), we accord great deference to the factfinder's opportunity to view the witnesses, hear their testimony, and assess their credibility (see People v Mateo, 2 NY3d 383, 410 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]). Upon this review, we find that the guilty verdicts with respect to failing to signal before turning, driving without a license, operating an unregistered motor vehicle, and operating a motor vehicle with an expired inspection certificate are not against the weight of the evidence.
We have considered defendant's remaining contentions and find them to be without merit (see People v Gonzalez, 38 NY2d 208, 210 [1975]; People v Tohom, 109 AD3d 253, 267 [2013]; People v Troy,162 AD2d 744, 744 [1990]; People v McCombs, 47 Misc 3d 44, 48-49 [App Term, 2d Dept, 9th & 10th Jud Dists 2015]).
Accordingly, the judgment convicting defendant of common-law driving while intoxicated is reversed and the accusatory instrument alleging the offense is dismissed. The judgments convicting defendant of aggravated unlicensed operation of a motor vehicle in the third degree, failing to signal before turning, driving without a license, operating an unregistered motor vehicle, and operating a motor vehicle with an expired inspection certificate are affirmed. 
MARANO, P.J., GARGUILO and RUDERMAN, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: December 20, 2018